# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**OTIS LARUE HUNTER, JR.,**

    Plaintiff,

    v.                                             Case No. 18-CV-1727

**LOISON KAST,** *et al.***,**

    Defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT FOR FAILURE TO EXHAUST

Otis Larue Hunter, Jr., a Wisconsin inmate representing himself, brings this lawsuit under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. On April 10, 2019, defendants Loison Kast and Luke Katze moved for summary judgment on the basis that Hunter did not exhaust the available administrative remedies before he initiated this case. The defendants assert that Hunter failed to file an inmate complaint that complied with the DOC's rules, despite being given two opportunities to do so. (ECF No. 17 at 1.)

Hunter disputes that he did not comply with the inmate complaint examiner's (ICE) orders. He explains that he filed his first inmate complaint on July 18, 2018. (*See* ECF No. 19-2 at 2; ECF No. 30-1 at ¶ 6.) The ICE returned that complaint the same day and gave him the opportunity to file a second inmate complaint. (ECF No. 19-2 at 1.) Hunter filed his second inmate complaint on July 24, 2018. (ECF No. 19-3

at 2.) The ICE returned Hunter's second inmate complaint two days later and gave him the opportunity to file a third inmate complaint. (ECF No. 19-3 at 1.) The defendants assert that Hunter did not file a third inmate complaint. (ECF No. 19 at ¶ 12.) Hunter states that he did, but he never received a response. (ECF Nos. 24 at 4; 26 at ¶¶ 4-9; 30-1 at ¶ 15.)

Because there was conflicting evidence about whether Hunter submitted a third inmate complaint, On July 11, 2019, I held an evidentiary hearing to "hear evidence, find facts, and determine credibility." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citations omitted). After duly considering the testimony and evidence presented, for the reasons explained below, I will deny defendants' motion for summary judgment for failure to exhaust.

## FACTS

At the evidentiary hearing, Hunter and Dodge Correctional Institution inmate complaint examiner Joanne Bovee testified. Hunter testified first in the defendants' case in chief, as an adverse witness. He began by testifying that Bovee rejected the first two inmate complaints he submitted about the incident at issue in this case. (Evid. Hearing Recording at 4:58-5:49.)[1] According to Hunter, in the second rejection letter, Bovee gave him an opportunity to submit a third inmate complaint. (*Id.* at 5:53-6:13.) Hunter testified that he complied and submitted a third inmate complaint shortly thereafter. (*Id.* at 6:19-7:40.) When he did not hear anything back from Bovee,

---

[1] I cite to the audio recording of the hearing.

he also submitted interview request forms and he filed an inmate complaint appeal. (*Id.*)

Hunter testified that he was hoping that the corrections complaint examiner (who review appeals) would follow up with the institution inmate complaint examiners, who would then investigate his inmate complaints. (*Id.* at 10:23-10:56.) Hunter explained that he reproduced an inmate complaint form and included it with his appeal to give the corrections complaint examiner an idea of what was in his inmate complaints. (*Id.* at 7:41-8:35.) The reproduced inmate complaint had the same general information as what was in the inmate complaints he submitted at his institution. (*Id.* at 15:27-17:42.) Hunter clarified, however, that the reproduced inmate complaint was not an exact copy of what he had submitted at his institution. (*Id.* at 7:41-8:35.)

Hunter dated the reproduced inmate complaint with the date he signed and sent the appeal, August 14, 2018. (*Id.* at 17:50-18:31.) He explained that the form asked for the date signed, which is why he dated it August 14; Hunter clarified that August 14 is *not* the date he submitted his third inmate complaint to Bovee. (*Id.* at 19:30-20:27.) He submitted his third inmate complaint on approximately July 28, 2018. (*Id.* at 20:07-37.)

Bovee was next to testify. She is employed at Dodge, where she has worked as an institution complaint examiner for about twenty-two years. (*Id.* at 20:23-22:19.) She has worked for the Department of Corrections for a total of thirty-four years. (*Id.* at 23:27-34.) Bovee testified that, as an inmate complaint examiner, her

3

responsibilities include ensuring that all inmates get a fair and impartial investigation into their allegations, collecting information, interviewing witnesses, and getting documentation. (*Id.* at 20:35-23:54.)

Bovee confirmed that she was an inmate complaint examiner at Dodge during the time Hunter submitted his inmate complaints. (*Id.* at 23:54-24:00.) There was a second inmate complaint examiner at that time; they split their workload based on inmate numbers. (*Id.* at 24:01-27.) Bovee handled inmate complaints from inmates with odd inmate numbers; the other inmate complaint examiner handled complaints from inmates with even inmate numbers. (*Id.*) Because Hunter's inmate number is odd, she was the one to handle his complaints. (*Id.* at 24:27-56.)

Bovee briefly described the inmate complaint process. (*Id.* at 25:07-26:25.) She explained that inmates can get an inmate complaint form from the officer on their unit or by writing her and asking for one. (*Id.*) Once the inmate writes his complaint, the inmate places it in a confidential envelope that is stamped to be opened only by the inmate complaint examiner. (*Id.*) After the complaint is submitted to Bovee's office, she opens the envelopes, date stamps them, reviews them, and splits them between caseloads. (*Id.*) For her caseload, she first reviews the complaints to determine whether they comply with the administrative code. (*Id.*) If a complaint does not, she will draft a return letter instructing the inmate on what to do to properly file his complaint. (*Id.*) If it is properly filed, she investigates the complaint and drafts a recommendation to the warden. (*Id.*) The warden makes the final decision. (*Id.*)

Bovee testified that copies of inmate complaints, including returned complaints, are scanned and saved in the Inmate Complaint Tracking System (ICTS). (*Id.* at 26:26-49; 27:45-55.) Bovee could not think of any circumstances under which an inmate's complaint would not be saved in ICTS. (*Id.* at 26:50-56.) She explained that she will not accept an inmate complaint if it is not properly filed. (*Id.* at 26:57-27:24.) For example, an inmate may be required to first attempt to informally resolve an issue, may be required to submit a signed form, or may be required to limit his complaint to one issue. (*Id.*) Bovee testified that she is obligated to give inmates one opportunity to correct a rejected inmate complaint. (*Id.* at 27:24-48.) She is not obligated to give them more than one opportunity to correct a complaint. (*Id.*)

Bovee testified that Hunter submitted an inmate complaint on July 18, 2018, regarding the incident at issue in this case. (*Id.* at 32:00-20.) Bovee returned the complaint to Hunter and instructed him to first try and informally resolve his complaint. (*Id.* at 32:21-33:03.) Hunter submitted a second inmate complaint on July 26, 2018. (*Id.* at 33:09-26.) Bovee returned his second inmate complaint the next day; the most glaring issue was that Hunter had used an outdated form. (*Id.* at 33:27-34:16.) Even though she was not required to, Bovee gave Hunter a second opportunity to submit a properly filed complaint. (*Id.* at 39:10-30.) Under DOC rules at that time, inmates had ten days to submit a corrected complaint after being given an opportunity to do so. (*Id.* at 43:24-44:10.) Bovee testified that she did not receive a third inmate complaint from Hunter. (*Id.* at 39:31-40:24; 45:30-48.)

The defendants rested their case, and Hunter testified again, as his only witness. Hunter explained that he received Bovee's second return letter on about July 26, 2018; the main thing that caught his eye was that he had used an outdated form when he submitted his second inmate complaint. (*Id.* at 1:33:48-1:34:02.) He stated that he did all he was supposed to do to address Bovee's concerns. (*Id.* at 1:36:45-48.) He first asked a correctional officer for a current complaint form, which he received when the supply cart came around at mealtime. (*Id.* at 1:34:03-30.) Hunter testified that he completed the form, making sure to address Bovee's reasons for returning his first two complaints. (*Id.* at 1:34:30-1:35:15.) He then slid the complaint form under his door; officers grabbed all the mail, including his complaint form. (*Id.* at 1:36:45-1:37:00.)

Hunter stated that he never heard anything back, so he wrote to everyone he could think of, including the warden. (*Id.* at 1:35:15-1:36:48.) Hunter testified that he talked to his psych doctor and asked him to talk to the captain of the restricted housing unit and find out why they were not responding. (*Id.* at 1:35:15-1:36:48.) Hunter also stated that he made it clear to his psych doctor that he wanted to pursue charges against the officers involved in the incident at issue. (*Id.*) Hunter also filed an appeal, asking them to look into the situation to help him understand why Bovee was not responding to his complaint. (*Id.* at 1:38:40-1:39:05.) He stated that he asked the appeal examiners to help him because he believed Bovee was unwilling to help him. (*Id.* at 1:39:42-1:40:48.) Hunter explained that he had to pay postage to file the appeal because appeals do not travel through regular institution mail like inmate

6

complaints do. (*Id.* at 1:35:15-1:36:48.) The appeal was returned to him, and Hunter never received anything from Bovee in response to his third complaint. (*Id.* at 1:37:39-50; 1:40:48-1:41:40.)

Hunter does not know if Bovee received his complaint; he testified that it is possible that officers mishandled the complaint after they picked it up from outside his cell door. (*Id.* at 1:37:59-1:38-:14.) He stated that officers may have placed it in the wrong mailbox so that it was not properly directed to the inmate complaint examiner office. (*Id.*)

## ANALYSIS

The Prison Litigation Reform Act (PLRA) applies to this case because plaintiff Otis Larue Hunter was incarcerated when he filed his complaint. Under the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

According to the Supreme Court, exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). To properly exhaust administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, a prisoner is not required to exhaust the administrative remedies if those remedies are not "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies will be deemed "unavailable" when prison officials do not respond to a properly-filed inmate complaint or when they prevent a prisoner from exhausting through affirmative misconduct, such as denying a prisoner necessary forms, destroying a prisoner's submissions, or requiring steps not mandated by regulation or rule. *See Smith v. Buss*, F. App'x 253, 255 (7th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Kaba*, 458 F.3d at 684; *Dale v. Lappin*, 376 F.3d 739, 742 (7th Cir. 2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).

In this case, whether Hunter exhausted his claim turns on whether he filed the third complaint after Bovee rejected the first two. I have no trouble crediting Bovee's testimony that she did not receive a third complaint from Hunter. She testified that there was no record of Hunter filing a third inmate complaint, and she did not recall receiving one from him. Bovee's testimony is credible given that she had given Hunter two opportunities to correct his non-compliant inmate complaint. She explained that the rules generally allowed inmates only one opportunity to correct a non-compliant inmate complaint, but because the allegations in Hunter's inmate complaint were serious, she opted to give him two opportunities. From this I infer that Bovee would have no motivation to fabricate not receiving a third inmate complaint from Hunter.

But I also find Hunter's testimony that he did submit a third complaint to be credible. He testified that he had complied with Bovee's instructions to file a third

8

inmate complaint on the proper form. While I acknowledge as an interested litigant, Hunter has a motive to fabricate, his testimony rings true based on the efforts that he made to draw the institution's attention to the defendants' alleged misconduct. He testified that he spoke to his psych doctor about his desire to pursue criminal charges against the defendants. He testified that he followed up on that conversation by submitting two psychological services requests, which he prepared on July 29 and August 8, 2018. (ECF No. 31-1 at 1-2).

Hunter also filed an inmate complaint appeal on August 14, 2018, in which he explained that Bovee was not responding to his questions about whether she was reviewing his complaints, and she would not return his resubmitted inmate complaints or interview requests. (ECF No. 26-1 at 5.) Hunter noted on the appeal form that he was enclosing an inmate complaint "which outlines [a]nd is pretty much 'is' what info Bovee rec[ei]ved." (*Id.*) As Hunter argued, it would not make sense that he would go to such great lengths to draw attention to the defendants' alleged misconduct, including paying to mail an appeal, but he would fail to file a third inmate complaint, which he could do with little effort for free. On this record, Hunter's testimony that he filed a third complaint rings true.

Defendants argue that Hunter's testimony that he filed a third complaint should be rejected, pointing, in part, to the fact that Hunter dated the inmate complaint August 14, 2018, which was past the deadline that Bovee had given him for filing a third inmate complaint. I disagree. Hunter testified that the inmate complaint he included with his appeal was not an exact copy of what he had submitted

9

to Bovee; instead, he meant only to give the examiner an idea of what he had submitted to her. Hunter noted that the form asks for the "Date Signed," and he signed the form on August 14, 2018, which is why he wrote that date. Hunter clarified that he submitted the third inmate complaint to Bovee on about July 28, 2018.

In the end, I credit both Bovee and Hunter's versions as not only plausible but credible. This, however, does not explain what happened to Hunter's third inmate complaint. Hunter explained that, because he was in the restricted housing unit, he was unable to personally deliver the inmate complaint to Bovee or place it in the complaint lockbox, so, per policy, he slid the inmate complaint under his cell door for a correctional officer to pick up and deliver. (Evid. Hearing Recordings at 1:59:30-2:00:42.)

Hunter highlighted that the defendants failed to foreclose the possibility that something happened to his inmate complaint after he slid it under his door. (*Id.* 1:56:55-1:57:12; 1:59:30-1:59:52.) In other words, Hunter suggested that his assertion that he slid a third inmate complaint under his door and Bovee's assertion that she did not receive a third inmate complaint from him could both be true. On the record before me, I cannot resolve this factual gap. At most the evidence of exhaustion is in equipoise to the evidence on non-exhaustion. Accordingly, because exhaustion is an affirmative defense on which defendants carry the burden, defendants have not shown that Hunter failed to exhaust his administrative remedies. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citations omitted).

Because the defendants failed to show that Hunter did not properly file a third inmate complaint, the court finds that the administrative remedies were unavailable to him. Accordingly, the court will deny the defendants' motion for summary judgment on exhaustion grounds. The court will set new dates for the completion of discovery and the filing of dispositive motions in a separate order.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment for failure to exhaust administrative remedies (ECF No. 16) is **DENIED**.

Dated in Milwaukee, Wisconsin this 21st day of August, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge